Reuven L. Cohen (Bar No. 231915)
rcohen@cohen-williams.com
Alyssa D. Bell (Bar No. 287751)
abell@cohen-williams.com
Gabriel L. Pardo (Bar No. 261625)
gpardo@cohen-williams.com
**COHEN WILLIAMS LLP**
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone:  (213) 232-5160
Facsimile:   (213) 232-5167

Attorneys for Defendant,
JOEL BARRY GILLIS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>JOEL BARRY GILLIS,<br><br>                    Defendant. | Case No.  CR 14-00712-SJO<br><br>***EX PARTE* APPLICATION FOR ORDER GRANTING REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A); DECLARATION OF GABRIEL L. PARDO & EXHIBITS A-D; [PROPOSED] ORDER** |

***EX PARTE* APPLICATION FOR ORDER GRANTING REDUCTION IN SENTENCE**

Defendant Joel Barry Gillis, by and through his counsel of record, Reuven L. Cohen Alyssa D. Bell, and Gabriel L. Pardo, hereby applies *ex parte* to this Court for an order granting Mr. Gillis a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The requested relief is sought on an urgent basis, in light of the exponentially increasing COVID-19 outbreak at USP Lompoc (where Mr. Gillis is housed); Mr. Gillis's advanced age and Chronic Obstructive Pulmonary Disease (COPD), which make him uniquely susceptible to severe illness and death from COVID-19; and the Bureau of Prisons' failure, to date, to take any action on the Court's furlough recommendation. The government opposes this application, for the reasons stated in government counsel's email (attached hereto as Exhibit D). The government advises that it intends to respond in writing to this *ex parte* application and respectfully requests a reasonable amount of time to do so.

Mr. Gillis waives presence at any hearing that may be held on this application. This application is based on the attached memorandum of points and authorities, the accompanying declaration of Gabriel L. Pardo and Exhibits A-D, all files and records in this case, and any further information as may be presented to the Court.

Respectfully Submitted,
COHEN WILLIAMS LLP

Dated: April 4, 2020         By: */s/ Reuven L. Cohen   /s/ Gabriel L. Pardo*
                                  Reuven L. Cohen
                                  Alyssa D. Bell
                                  Gabriel L. Pardo
                                  Attorneys for Defendant
                                  JOEL BARRY GILLIS

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. PROCEDURAL HISTORY ........................................................................... 2

III. MR. GILLIS SHOULD BE GRANTED A REDUCTION IN SENTENCE ................ 3

    A.    The COVID-19 Outbreak at Lompoc And Mr. Gillis's Unique Vulnerability .................................................................................... 3

    B.    Requiring Mr. Gillis to Exhaust His Administrative Remedies Would Be Futile ......................................................................................... 6

    C.    The Severe Threat COVID-19 Poses to Mr. Gillis While Incarcerated Is An Extraordinary and Compelling Circumstance That Justifies A Reduction In Sentence ................................................................... 7

    D.    Mr. Gillis Is Not a Danger to The Community, And The Section 3553(a) Factors Support a Reduction In Sentence ............................. 9

IV. CONCLUSION ........................................................................................... 10

*EX PARTE* **APPLICATION FOR ORDER GRANTING REDUCTION IN SENTENCE**

# I. INTRODUCTION

On March 31, the Court issued a recommendation that Joel Gillis be granted an emergency furlough. *See* Dkt. # 161. Since then, the severity of the crisis that Mr. Gillis faces while in custody has worsened dramatically. It is now clear that more substantial intervention is needed. Thus, through this second *ex parte* application, Mr. Gillis seeks an order granting a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).

The following developments have occurred since the Court's furlough recommendation, exacerbating an already dangerous situation and precipitating a dire need for emergency relief:

- The severity of the COVID-19 outbreak at USP Lompoc (where Mr. Gillis is incarcerated) has dramatically escalated—the number of confirmed cases has *more than quintupled*. Specifically, the number of cases stood at three on March 31; doubled to six on April 1; doubled again to twelve on April 2; increased to fourteen on April 3; and increased again to seventeen on April 4. *See* Declaration of Gabriel L. Pardo ("Pardo Dec."), ¶ 2; *see also www.bop.gov/coronavirus/* (last accessed April 4, 2020). It is likely that this reported exponential increase significantly understates the true extent of the outbreak at USP Lompoc.

- Through counsel, Mr. Gillis presented his requests for both an emergency furlough and a reduction in sentence to the Warden at USP Lompoc on April 1. Mr. Gillis's request included the Court's order recommending an emergency furlough as an exhibit. To date, there has been no response. *See* Pardo Dec., ¶ 3 & Ex. A.

In recent days, moreover, courts across the country have issued important rulings confirming that: (1) the COVID-19 pandemic is an "extraordinary and compelling reason" for granting a reduction in sentence to uniquely at-risk individuals like Mr. Gillis; and (2) administrative exhaustion is unnecessary, and would negate relief—particularly where, as here, there is an active outbreak at the defendant's location. *See, e.g.*, *United States v. Perez*, No. 17 CR. 513-3 (AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) (granting reduction in sentence to prisoner at high risk of severe complications from COVID-19 and concluding

1

***EX PARTE* APPLICATION FOR ORDER GRANTING REDUCTION IN SENTENCE**

that administrative exhaustion would be futile); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020) (granting reduction in sentence to prisoner who "suffers from underlying health conditions that render him especially vulnerable to COVID-19"); *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020) (granting reduction in sentence to prisoner with Chronic Obstructive Pulmonary Disease).

Time is running out for Mr. Gillis. As a long-time sufferer from Chronic Obstructive Pulmonary Disease (COPD), he is uniquely susceptible to severe complications from COVID-19. He faces a substantial risk of death. And, the exponentially growing outbreak at USP Lompoc demonstrates that it is not a matter of if, but when the disease makes its way to Mr. Gillis. For these reasons, Mr. Gillis respectfully requests that this Court—like those cited above—recognize the urgent and dangerous nature of his current situation and take quick action to ensure his health and survival. Mr. Gillis should be granted a reduction in sentence, to time-served.[1]

## II. PROCEDURAL HISTORY

Mr. Gillis pleaded guilty to a four-count Information in January 2015, alleging conspiracy, mail fraud, and wire fraud offenses related to a Ponzi scheme he admitted to operating with co-defendant Edward Wishner. *See* Dkt. # 67, Presentence Report, ¶¶ 1-4; Dkt. # 46 (Statement of Facts in Support of Entry of Guilty Pleas by Defendant Joel Barry Gillis). On November 16, 2015, Mr. Gillis was sentenced to a custodial term of 120 months, to be followed by three years of supervised release. *See* Dkt. # 105 (Judgment and Commitment Order). Mr. Gillis is currently housed within the Central District of California, at USP Lompoc, with a projected release date of July 4, 2024. Pardo Dec., ¶ 2.

---

[1] To the extent the Court deems it necessary, a home confinement condition may be added to Mr. Gillis's three-year term of supervised release.

### III. **MR. GILLIS SHOULD BE GRANTED A REDUCTION IN SENTENCE**

**A.     The COVID-19 Outbreak at Lompoc And Mr. Gillis's Unique Vulnerability**

Mr. Gillis's *ex parte* application for a furlough recommendation discussed the COVID-19 pandemic and the dramatic threat it presents to incarcerated individuals. *See* Dkt. # 156. That discussion need not be fully repeated here, but it is important to note that the pace of the pandemic has continued to accelerate. As of April 3, 2020, a total of 239,278 cases and 5,443 deaths have been reported in the United States.[2] As of April 1, 2020, a total of 9,191 cases and 203 deaths had been reported in California.[3]

Most importantly, it is now clear that COVID-19 is running rampant at USP Lompoc (where Mr. Gillis is housed). When Mr. Gillis filed his *ex parte* application for a furlough recommendation on March 27, there were no reported cases at USP Lompoc. When Mr. Gillis filed his reply brief in support of the application on March 31, there were three confirmed cases at USP Lompoc. *See* Dkt. # 160 (reply brief), at 3. When Mr. Gillis submitted his request for furlough and compassionate release to the Warden the next day (April 1), the number of reported cases had *doubled* to six. *See* Pardo Dec., ¶ 2 & Ex. A, at 2. The day after that (April 2), the number of reported cases *doubled again* to twelve. Between April 3 and April 4, five more cases were confirmed, raising the total number of reported inmate cases to seventeen (with two confirmed cases amongst Lompoc's staff). Pardo Dec., ¶ 2; *see also* www.bop.gov/coronavirus/ (last accessed April 4, 2020).

While the reported number of cases at USP Lompoc is thus increasing exponentially, there is good reason to believe that these numbers vastly understate the true extent of the outbreak. For example, as of March 29, the Bureau of Prisons ("BOP") reported a total of twelve cases at FCI Oakdale in Louisiana, while the Washington Post reported thirty-one.

---

[2] CDC, Cases in U.S. (last updated April 3, 2020) (last accessed April 3, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.
[3] California Department of Public Health ("CDPH"), COVID-19 Updates (last updated April 2, 2020) (last accessed April 3, 2020), *available at* https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx.

*See Rodriguez*, 2020 WL 1627331, at *9 (citing this discrepancy and other facts and concluding that "[t]he BOP's reported cases are rapidly growing and almost certainly underestimate the true number of infections").

As discussed in Mr. Gillis's *ex parte* application for a furlough recommendation, the threat COVID-19 poses within prison walls is unique in that it cannot be effectively mitigated through "social distancing." As Judge Brody simply and accurately put it, "[p]risons are tinderboxes for infectious disease" and "are ill-equipped to prevent the spread of COVID-19." *Id.* at *1, *8; *see also Gonzalez*, 2020 WL 1536155, at *2 ("Because it is impossible to practice social distancing or isolation in a jail setting, the pandemic will be devastating when it reaches jail populations.").

There is no better evidence of this than the BOP's utter failure, to date, to contain the spread of COVID-19 within its institutions' walls. In opposing Mr. Gillis's *ex parte* application for a furlough recommendation, the government trumpeted USP Lompoc's "rigorous screening and cleansing procedures in place to minimize the risk of any inmates being infected" and noted that "there have so far been no reported COVID-19 cases" at USP Lompoc. *See* Dkt. # 159, at 2. That statement became false hours after it was made, when the BOP reported three positive inmate cases at Lompoc (and one positive staff case). Pardo Dec., ¶ 2; *see also* Dkt. # 160 (reply), at 3. As noted above, the rate of inmate infection at Lompoc has now more than quintupled (and the rate of staff infections has doubled). Thus, here, as in *Rodriguez*, "[t]he government's assurances that the BOP's 'extraordinary actions' can protect inmates ring hollow given that these measures have already failed to prevent transmission of the disease at the facility where Mr. [Gillis] is housed." *Rodriguez*, 2020 WL 1627331, at *8.

For Mr. Gillis, a COVID-19 infection may well prove deadly. Mr. Gillis was diagnosed with COPD in 2007. *See* Dkt. # 67, Presentence Report (PSR) ¶ 85. He continues to suffer from COPD to this day. *See* Pardo Dec., ¶ 4 & Ex. C (September 2019 Health Services Consultation Request including COPD in list of Mr. Gillis's "health problems"). Moreover, there are indications that Mr. Gillis's lung condition is worsening. A May 2019

radiology report notes that Mr. Gillis "complains of dyspnea worsening for several months." *See* Pardo Dec., ¶ 4 & Ex. B. Dyspnea is the medical term for shortness of breath. The report also notes that Mr. Gillis is a "1-2 ppd smoker 50+ years" with "diminished left lung sounds under auscultation." *Id.*

Because Mr. Gillis is 79 and suffers from COPD, he is at high risk of becoming severely ill from COVID-19, or losing his life. To illustrate:

- Eight out of ten deaths from COVID-19 reported in the U.S. have been in adults 65 years and older.[4]
- The Centers for Disease Control and Prevention ("CDC") recognize that individuals over 65 who have serious underlying medical conditions such as "chronic lung disease" are at "high-risk for severe illness from COVID-19."[5]

For these reasons, Chief Judge Rice in the Eastern District of Washington recently concluded that an inmate was among "the most susceptible to the devastating effects of COVID-19" because she was "in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable." *Gonzalez*, 2020 WL 1536155, at *3.

In sum, the inescapable conclusion reached by Judge Brody in *Rodriguez* applies equally here: "The BOP cannot adequately protect Mr. [Gillis] from infection, especially in light of his vulnerability and the presence of COVID-19 in [USP Lompoc]." *Rodriguez*, 2020 WL 1627331, at *9. FCI Oakdale—the Louisiana prison mentioned above—offers a chilling example of what may be in store at USP Lompoc and other COVID-19 hotspots: as of April 3, *five inmates have died at Oakdale*.[6]

---

[4] *See* Centers for Disease Control and Prevention ("CDC"), Coronavirus Disease 2019 (COVID-19), Older Adults (last accessed April 3, 2020), *available at* www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications/older-adults.html.

[5] *See* CDC, Coronavirus Disease 2019 (COVID-19): People who are at higher risk for severe illness, *available at* www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html (last updated April 2, 2020) (last accessed April 3, 2020).

[6] Caroline Habetz, KPLC News, Fifth Inmate at Oakdale Federal Prison Dies from COVID-19 (April 3, 2020), *available at* www.kplctv.com/2020/04/03/fifth-inmate-oakdale-federal-prison-dies-covid-/.

**B.      Requiring Mr. Gillis to Exhaust His Administrative Remedies Would Be Futile**

The reduction in sentence statute, first enacted as part of the Comprehensive Crime Control Act of 1984, granted district courts the authority to reduce a defendant's term of imprisonment where there were "extraordinary and compelling reasons" warranting such reduction. In 1984, however, the Court had such authority only upon a motion of the Director of the BOP. 18 U.S.C. § 3582(c)(1)(A)(i); *see also* PL 98-473 (HJ Res 648), PL 98 473, 98 Stat 1837 (Oct. 12, 1984). In 2018, Congress enacted the First Step Act, which amended Section 3582(c)(1)(A). *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). As of December 2018, Section 3582(c)(1)(A) now permits a defendant to file directly with the Court a motion seeking reduction of his or her sentence for extraordinary and compelling reasons if: (1) the defendant has fully exhausted his or her administrative remedies; or (2) there has been a lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A)(i).

On April 1, 2020, Mr. Gillis requested, through counsel, that the Warden at USP Lompoc file a motion for reduction in sentence on his behalf. *See* Pardo Dec., ¶ 3 & Ex. A. To date, neither counsel nor Mr. Gillis has received a response. *Id.*

While less than the minimum number of thirty days has elapsed, Mr. Gillis should not be required to wait any longer before pursuing relief with this Court. Administrative exhaustion may be excused where "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action," including where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); *see also Terrell v. Brewer*, 935 F.2d 1015, 1019 (9th Cir. 1991) (exhaustion not required if "administrative remedies would be futile" or "the administrative procedure is clearly shown to be inadequate to prevent irreparable injury").

In *Perez*, the court applied these principles and concluded that exhaustion was not required for a defendant who, like Mr. Gillis, was housed at a facility with confirmed COVID-19 cases and was "at risk of contracting and experiencing serious complications

from COVID-19." *Perez*, 2020 WL 1546422, at *1, *3. Noting that "even a few weeks' delay carries the risk of catastrophic health consequences," the court held that defendant Perez's "undisputed fragile health, combined with the high risk of contracting COVID-19 in the MDC, justifies waiver of the exhaustion requirement." *Id.* at *3; *see also United States v. Colvin*, No. 3:19CR179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (waiving exhaustion requirement in part because "if Defendant contracts COVID-19 before her appeals are exhausted, that undue delay might cause her to endure precisely the 'catastrophic health consequences' she now seeks to avoid").

The Court should reach the same conclusion here. In light of Mr. Gillis's advanced age; his long-existing and documented COPD; the complaints of "dyspnea worsening for several months" and "diminished left lung sounds under auscultation" evident in his medical records; and the exponentially accelerating COVID-19 outbreak at USP Lompoc, it is not hyperbole to state that—absent immediate intervention—Mr. Gillis may not be alive in 30 days. This is the epitome of a case in which exhaustion should be waived to prevent irreparable harm and undue prejudice.

**C.     The Severe Threat COVID-19 Poses to Mr. Gillis While Incarcerated Is An Extraordinary and Compelling Circumstance That Justifies A Reduction In Sentence**

This Court is empowered to grant a reduction in sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). In making this determination, the statute also instructs the Court to find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The applicable policy statement from the Sentencing Commission is found in Section 1B1.13 of the United States Sentencing Guidelines. *See* U.S.S.G. 1B1.13. This policy statement, however, has not been updated to account for the changes to Section 3582(c)(1)(A) enacted through the First Step Act and is thus "now clearly outdated." *Rodriguez*, 2020 WL 1627331, at *3. For this reason, "a majority of district courts have concluded that the old policy statement provides helpful guidance, but does not constrain a court's independent assessment

7
EX PARTE APPLICATION FOR ORDER GRANTING REDUCTION IN SENTENCE

of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *Id.* at *4 (internal quotation marks and alterations omitted) (collecting cases).

In *Rodriguez*, the court considered a motion for reduction in sentence from a prisoner who, like Mr. Gillis, "suffers from underlying health conditions that render him especially vulnerable to COVID-19." *Id.* at *7. While acknowledging that these underlying conditions, in and of themselves, were not extraordinary, the court nonetheless concluded that "the confluence of COVID-19 and [these] health conditions . . . makes this circumstance extraordinary and compelling." *Id.* at *8; *see also Gonzalez*, 2020 WL 1536155, at *3 (granting reduction in sentence for 64-year-old defendant with COPD; noting that "[i]n normal times, Defendant's condition would be manageable" but "these are not normal times").

Even if limited by the enumerated examples in Section 1B1.13, other courts have correctly concluded that the threat COVID-19 poses to uniquely susceptible individuals is consistent with the Sentencing Commission's policy statement. The commentary to the policy statement provides that a reduction may be warranted where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii). In *Perez*, the court found that a reduction in sentence was consistent with this commentary because "[c]onfined to a small cell where social distancing is impossible, Perez cannot provide self-care because he cannot protect himself from the spread of a dangerous and highly contagious virus." *Perez*, 2020 WL 1546422, at *4. *See also United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (same); *Colvin*, 2020 WL 1613943, at *4 (same).

Other courts have held that a reduction in sentence for individuals uniquely susceptible to COVID-19 is consistent with the catch-all "other reasons" justification set forth at comment note 1(D). *See* U.S.S.G. § 1B1.13 comment n.1(D); *see also Gonzalez*, 2020 WL

1536155, at *2 (reduction in sentence for elderly prisoner with COPD "is best addressed under the 'other reasons' category"); *United States v. Resnick*, No. 12-cr-00152-CM, Dkt. No. 461, Decision and Order Granting Motion for Compassionate Release, at 12 (S.D.N.Y. April 2, 2020) (citing comment note 1(D) and concluding that "Resnick's high susceptibility to COVID-19 falls within the purview of this catchall").

In sum, as in the above cases, the severe risk COVID-19 poses to Mr. Gillis, in combination with the accelerating outbreak at USP Lompoc, constitute "extraordinary and compelling reasons" to reduce his sentence.

**D.    Mr. Gillis Is Not a Danger to The Community, And The Section 3553(a) Factors Support a Reduction In Sentence**

In considering a motion for reduction in sentence, Congress has directed the Court to consider "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement also directs the Court to consider whether Mr. Gillis is "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). These considerations, on balance, weigh in favor of a reduction in sentence.

Mr. Gillis is a 79-year-old first-time offender with no criminal history apart from the instant fraud offense. *See* Dkt. # 67 (PSR), ¶¶ 62-67. He remained on bond following his guilty plea and complied with all conditions of release. PSR ¶ 6. He later self-surrendered, as ordered, to serve his sentence. *See* Dkt. # 115 (Verification of Surrender). If released, he will be cared for by his daughters, and will live in the family's vacant apartment where he can self-quarantine until the grave threat of COVID-19 abates (under the supervision of the Probation Office, and subject to home confinement if the Court deems it necessary). Pardo Dec., ¶ 5. Mr. Gillis is not a danger to anyone.

Mr. Gillis accepted responsibility for his crimes early (pre-indictment). PSR ¶¶ 36-39. While these crimes were serious, he has suffered serious consequences. To date, he has been imprisoned for more than four years. Furthermore, the Section 3553(a) factors direct the Court to consider, *inter alia*, "the need for the sentence imposed . . . to provide the

defendant with needed . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The overarching directive of the statute is that a sentence must be "sufficient, but not greater than necessary" to comply with the purposes of sentencing. *Id.* These considerations weigh heavily in favor of a reduction in sentence.

The inescapable truth is this: the BOP is unable to provide the type of care that medical experts—and indeed, the federal and state governments—agree is necessary in order for elderly, at-risk individuals like Mr. Gillis to avoid severe illness and death in the midst of this unprecedented, and deadly, pandemic. Social distancing is simply not achievable while incarcerated. The risk to Mr. Gillis is not merely hypothetical; it is *real and imminent*. It is now clear that COVID-19 is spreading rapidly throughout USP Lompoc. In very short order, Mr. Gillis's ten-year sentence will, for all intents and purposes, be converted to a death sentence.

Undoubtedly, this was not what the Court intended when it sentenced Mr. Gillis to ten years' imprisonment. *Cf. Rodriguez*, 2020 WL 1627331, at *12 (observing that the original sentence "did not include incurring a great and unforeseen risk of severe illness or death"). At this very moment, Mr. Gillis faces a risk of severe illness or death, and this risk simply cannot be abated until he is removed from a prison setting and allowed to self-quarantine, as the government itself has directed at-risk individuals like Mr. Gillis to do.

## IV.  **CONCLUSION**

For the foregoing reasons, Mr. Gillis respectfully requests that the Court issue an order reducing his sentence to time-served and ordering forthwith release.

Respectfully Submitted,
COHEN WILLIAMS LLP

DATED: April 4, 2020              By: */s/ Reuven L. Cohen*
                                       Reuven L. Cohen
                                       Alyssa D. Bell
                                       Gabriel L. Pardo
                                       Attorneys for Defendant
                                       JOEL BARRY GILLIS